Wardlaw, J.
Simon Verdier, late of Colleton District, died June 21, 1853, leaving a widow, Catharine B., and no descendant, and a will, dated September 5,1825, whereby he nominated his widow and.James Bowman executors, and, without any mention of his debts, gave, to his widow the whole of his estate, real and personal, except a bequest of $3,000 and an alternative legacy of a family of negroes or *139 $1,000 to Bowman, who predeceased testator, in lieu of commissions. After making his will, testator acquired valuable real estates in this State and elsewhere, which were suffered to pass by descent.
The three suits named in the caption, respectively presented for judgment, the claims, to a share of the descended realty of the decedent, of Alexander Yerdier, brother of testator, John A. Fraysse, son of testator’s sister, and Francis G. Grezelle, son of testator’s aunt; all the bills recognizing the title of the defendant to the real estate devised, and to a moiety certainly, and to two-thirds, if the brother and nephews were aliens, under our Statutes of Distribution, of the descended real estate. The answers of defendant submitted that the real estate of her late husband, not devised, was liable for the payment of his debts, before resort for this purpose could be had to the personalty bequeathed to her, without charge for debts. To the second of these bills, by the creditors of John A. Fraysse, and to that alone, the children of John A. Fraysse, they being natives of this country, were made parties defendant, probably by amendment of the bill; and they filed an answer. The cases were heard in connection at the same sitting, February, 1858, by Chancellor. Wardlaw, and February 18, with consent of all the counsel, he ordered the Commissioner to inquire and report as to the real estate acquired by Simon Yerdier, after the execution of his will; and on the 19 th February, 1858, filed his decree adjudging that the claims on the part of Alexander Yerdier and John A. Fraysse should be dismissed, as these persons were aliens, being natives of France, not naturalized in this country, nor entitled to inherit by. force of any treaty between France and the United States; that Grezelle, having been naturalized before the death of testator, was entitled to take by descent, and that he and the children of Fraysse, as standing in the same degree of kindred'to the deceased, were entitled to distribute among them per capita one-third of the descended real estate; *140 and that the descended lands were liable for the debfs of the estate before the personalty bequeathed uncharged, and the Chancellor ordered a reference to the Commissioner to ascertain the amount of the debts paid by the executrix. On reports made by the Commissioner, orders were obtained by consent in August and November, 1858, for sales of the descended lands, and these orders have been executed. At February sitting, 1860, the Commissioner made a report of his sales, and also as to the amount of debts paid by the executrix, and no exceptions being filed, this report was confirmed by Chancellor Carroll. • A motion was submitted to the Chancellor to distribute the proceeds of the sales of the lands descended among the children of Fraysse, in exclusion of Grezelle, and exonerated from the payment of debts, the personal assets being ample for this purpose; and this motion was refused as manifestly in conflict with the decree of February, 1858. From this refusal and from the former decree, the children of Fraysse, and their mother, interested as distributee of some of this class who have died, appeal, and affirm that Grezelle is not so near in kindred to intestate as the children of Fraysse, and that the personalty, under the circumstances, is the primary fund for payment of debts.
It is too clear for argument that the whole fault in decision is in the decree of February, 1858, and that Chancellor Carroll erred in no respect in refusing to entertain an appeal from the judgment of his predecessor, co-ordinate in authority. The leading question in the case, therefore, is as to the right of the appellants to appeal now from the decree of February, 1858.
The fifth section of the Act of 1808, 7 Stat. 305, prescribes that appeals shall be taken from decrees in equity, making no distinction between interlocutory and final decrees, to the next sitting of the Court of Appeals after the filing of the decrees ; and the 6th and 9th rules of the ‘Court of Appeals, Mil. Comp. 30, prescribe, besides other particulars, that every *141 appealing party shall give notice of his intention to appeal within fifteen days after notice of decree filed, and docket his cause at the first term of the Court of Appeals after it has been decided. The recent course of the Court of Appeals in Equity (and their decisions are authoritative) has been to exact in general the promptitude of appeal demanded by the Act and the Bules, and still as to decrees not final and depending as to the result on the further action of the Court, to allow a party to retain his right of appeal until he ascertain that he is really damnified by the decree. Thus a widow ordered to elect between her dower and a provision for her in her husband’s will, may postpone her appeal until she has the means from the Master’s report to determine that she is injured by being put to election. So in account, a decree adjudging the liability of a party to account is .not final in its nature, nor by necessary consequence injurious to the accounting party on the terms prescribed for taking the account; and in such case, while he may appeal at once from the decree, he may wait for the final judgment fixing the extent of his liability, and then bring under consideration all interlocutory orders, leading to the j udgment. Appellate tribunals disclaim being merely professional advisers to any portion of the community, and are properly reluctant to decide questions which may have no practical effect on the interests of the parties before them; but they should discourage all that delay of justice which is as disastrous as its denial, and especially should prevent the success of that sordid tardiness induced by speculations of profit from changes of opinion, or of persons, in the forum.
The case of Price vs. Nesbitt, 1 Hill Ch. 453-4-7, especially by its reference to a previous decision, has been supposed to decide that the right of appeal, from all the judgments in a case, remains so long as there is an undecided fragment in the cause. Chancellor Harper endeavored to correct this error in Britton vs. Johnson, Dud. Eq. 28, by explaining that *142 Price vs. Nesbitt belonged to tbe procedure of tbe Court as to rehearing and review, and not as to appeal. According to the English practice, the Court, on proper showing, may review and reverse its decree while the cause is under its control, and even may corect a plain error, especially if clerical, on its own motion, without any petition; Dan. Oh. Pr. 1724, n; and our own practice is quite as liberal. See Lemacks vs. Glover, 1 Rich. Eq. 141; Donnelly vs. Evart, 3 Rich. Eq. 18. The Chancellor proceeds to remark that the English practice should be pursued throughout, and that there should be a suggestion of specific errors, certificate of counsel as to errors, and decision thereupon without argument. ' And then embracing both rehearings and appeals, says: “It is a great mistake to suppose that parties are at liberty, as of course and of right, again to stir a matter which has been once adjudged, without the permission of the Court. This wouid be a source of endless confusion) embarrassment and uncertainty.” In the case of Britton vs. Johnson, there had been an appeal from one part of the decree, which was decided, and the attempt was made to appeal again from another part of the same decree, (with plausible suggestion of error,) but the Court would not entertain the second appeal.
In Brown vs. Postell, 4 Rich. Eq. 71, 77, where a decree pronounced by one Chancellor, affirming the right of plaintiff, had been in effect superseded, by the decretal order of a second Chancellor, in the directions for making new parties and as to the terms of reference to the Commissioner, and a third Chancellor, on the facts found by the Commissioner, decided against the right of the plaintiff) it was held, on appeal from the last decree, that the. principles of the first decree were open to investigation. In pronouncing the judgment, Chancellor Dargan says of Price vs. Nesbitt: “The extent to which the right of appeal was allowed in that case has given rise to much discontent. It is supposed by many *143 to sanction a rule mischievous and cumberous in operation.’;’ And he borrowed no force from it.
In Boyce vs. Boyce, 6 Rich. Eq. 321, it is said by the organ of the Court: “It is lamentable that the decision of Price vs. Nesbitt, so often quoted, was ever made. It has been a source of annoyance ever since it. was pronounced. It' seems that .no amount of explanation or repudiation can prevent its being cited as authority. Seventeen years ago enough was said in Britton vs. Johnson to prevent any further recurrence to it. All other means failing, I am prepared -to expressly overrule it.”
In Simpson vs. Downes, 5 Rich. Eq. 424, Chancellor Dargan announced as the result of the deliberations of the Court: “ Where there is a final decree as to any one of the parties, or any distinct branch of the litigation, so that nothing remains to be adjudged as to that party or that branch of litigation, the appeal must be taken within the time and in the manner prescribed by the rules of Court, or the right of appeal will be lost.” The course of practice thus announced was pursued in Rawls vs. Walls, 5 Rich. Eq. 143, and McRae vs. David, 7 Rich. Eq. 377; and see Seaman vs. Mure, 7 Rich. Eq. 284; Hurt vs. Hurt, 6 Rich. Eq. 114; and Dyson vs. Leek, there cited.
Now, to apply this doctrine to the present case, it is alto-, gether plain that the decree of February, 1858, explicitly adjudged in favor of Grrezelle as one of the distributees, displacing others to the extent of his share, and that the descended realty was liable for debts before personalty. Nothing as to either point remained to be adjudged, in the former as to the party, and in the latter as to the branch of litigation, although matters of detail in execution of the decree were left to be adjusted by the ministerial officer of the Court. All affecting the merits — the rights and principles involved — was absolutely determined.
As a judge I am satisfied that policy and the law require the reasonable diligence herein enforced; I feel some per *144 sonal regret that my own miscarriage works prejudice to a party, in any particular, but in this casé perhaps the blunder may be retrieved by a different remedy from appeal.
Whatever may have produced my mistake in 1858, it seems to me palpable now that, according to the rule for computing kindred, by beginning at the intestate, going up to the common ancestor, and thence down to the person claiming kindred inclusively, reckoning each step as one degree, Grezelle is in the fifth degree of kindred, and postponed a step to the children of Fraysse. If the correct view had been adopted in 1858, all the bills would have been dismissed, and the children of Fraysse left to their own plaint; but we cannot now undo and set aside the intermediate acts in execution of the decree, upon appeal too tardily presented.
As to the rank of liability for debts of the lands and personalty in this case, of course we adjudge nothing; but some of us are not satisfied that the case of Warley vs. Warley, Bail Eq. 398, on the authority of which this point was decided, is overruled in this respect by the case of Henry vs. Graham, 9 Rich. Eq. 100, unpublished in February, 1858, and the case of Lloyd vs. Lloyd, 10 Rich. Eq. 469, wherever there is no direction in the will concerning the debts.
It is ordered that the appeal be dismissed.
Johnstone, J., concurred.